**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1763**
_____

PROGRESSIVE CHURCH OF OUR LORD JESUS CHRIST, INC.,

Plaintiff - Appellee,

v.

PROGRESSIVE CHURCH OF OUR LORD JESUS CHRIST-TALLAHASSEE, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:19-cv-03541-JFA)

_____

Submitted:  September 30, 2022                    Decided:  October 12, 2022

_____

Before THACKER and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Megan A. Rosenberg, Jennifer C. Rey, THE HOGAN LAW FIRM, LLC, Brooksville, Florida; Louis D. Nettles, NETTLES LAW FIRM, Florence, South Carolina, for Appellant.  James Y. Becker, Costa M. Pleicones, Columbia, South Carolina, Sarah P. Spruill, HAYNSWORTH SINKLER BOYD, P.A., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Progressive Church of Our Lord Jesus Christ, Inc. (the "Church") filed suit against the Progressive Church of Our Lord Jesus Christ-Tallahassee, Inc. (the "Tallahassee Congregation") to determine the validity of a deed signed by the Presiding Bishop of the Church purporting to transfer a parcel of real property where the Tallahassee Congregation worshipped (the "Tallahassee property") to the Tallahassee Congregation without the permission of the Church's Board of Bishops. The district court determined that the deed was invalid and granted summary judgment in favor of the Church. The Tallahassee Congregation appeals, arguing that the Board of Bishops was illegitimate, the Church's Constitution should be given no weight because the Church did not adhere to it, and the Tallahassee Congregation paid for the purchase of the Tallahassee property. We affirm.

We review de novo a district court's order granting summary judgment. *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute exists "if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). In determining whether a genuine issue of material fact exists, this court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to . . . the nonmoving party." *Id.* at 565 n.1 (internal quotation marks omitted).

2

"[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1976) (internal quotation marks omitted). "[R]eligious freedom encompasses the power of religious bodies to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.* at 721-22 (cleaned up). "In assessing whether to exercise jurisdiction in a civil proceeding involving a church, it is important to determine whether the church is of a 'hierarchical' nature. If the church is hierarchical, a civil court should defer to the final authority within its hierarchy, declining even to determine . . . whether it has complied with church laws and regulations." *Dixon v. Edwards*, 290 F.3d 699, 715 (4th Cir. 2002). In determining whether a church is hierarchical, a court considers whether:

> 1) The corporations in question are organized under the state religious corporations act governing the incorporation of religious societies that are subordinate parts of larger church organizations.
>
> 2) Resolutions of the subordinate entity acknowledge the superiority of the superior entity.
>
> 3) By-laws of the lower authority have been submitted to the higher for approval.
>
> 4) The priest takes an oath to be obedient to the higher authority.
>
> 5) Provisions in the constitutions and by-laws of both the superior and subordinate levels suggest a hierarchical relationship.

*Id.*

Our review of the record supports the district court's conclusion that the Church operated as a hierarchical organization and that deference is owed to the Church's highest

3

authority. *See id.* The Church is incorporated under South Carolina's act governing the incorporation of religious organizations; the Church Constitution provides that the organization operates on national, district, and local levels, provides for the collection of fees from districts to be rendered to the national organization, and requires that member churches adhere to the rules and bylaws of the Church; and upon their appointment, pastors of local congregations agree to operate under the Board's authority and pursuant to the Church Constitution. We therefore conclude that the district court did not err in determining that the Church was a hierarchical organization.

The Board of Bishops is the highest authority within the Church, according to its Constitution. *See id.* at 717 (looking to church's governing documents to determine its highest authority). At the time the deed purporting to transfer the Tallahassee property was signed, the Board of Bishops had been properly appointed in compliance with the Church Constitution; any alleged history of noncompliance with the Constitution by the Church is irrelevant. And, while the Tallahassee Congregation claims that the 2019 election and appointment of the Board of Bishops occurring before the deed was executed was illegitimate, a civil court defers to the hierarchical authority in matters of internal church government and will not scrutinize the Church's appointments to the Board of Bishops. *See id.* at 715. Although the Tallahassee Congregation argues that there is a question of fact as to who supplied the funds for the original purchase of the property, this question is immaterial because the record makes clear that the property was purchased by the Church, the mortgage and property were titled in the Church's name, and the Church Constitution provided for the ownership of churches by the national Church organization.

4

Because the Church is incorporated in South Carolina, South Carolina's statute governing nonprofit corporations applies to the Church's operations. *See Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 427 F.2d 862, 868 (4th Cir. 1970) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)) (stating that substantive issues in a diversity suit are resolved according to state law). Turning to the validity of the transfer, South Carolina law requires that every corporation have a board of directors, and that all corporate powers be exercised and affairs of the corporation be managed by the board, unless the articles of incorporation authorize another person to exercise particular powers. S.C. Code Ann. § 33-31-801 (2006). "If religious doctrine governing the affairs of a religious corporation is inconsistent with the provisions of [South Carolina law governing nonprofit corporations], the religious doctrine controls." S.C. Code Ann. § 33-31-180 (2006). Because the Tallahassee property is located in Florida, Florida law governs the transfer of property. Florida law requires either that the party transferring the property or "the party's lawfully authorized agent" sign the deed before two witnesses, Fla. Stat. § 689.01 (2021), or that an instrument be "sealed with the common or corporate seal and signed in its name by its president or any vice president or chief executive officer," Fla. Stat. § 692.01 (2021).

Although the deed in this case was signed by the Presiding Bishop, the deed did not contain a corporate seal, and therefore did not comply with the requirements of Fla. Stat. § 692.01. As such, to be effective, the deed must have been signed by the Church's lawfully authorized agent. *See DGG Dev. Corp. v. Estate of Capponi*, 983 So. 2d 1232, 1233-34 (Fla. Dist. Ct. App. 2008) (stating that a deed is ineffective on its face to convey title if not properly executed in accordance with the conveyancing statutes). Neither the

5

articles of incorporation nor the Church Constitution authorize the Presiding Bishop to transfer property on behalf of the Church. Thus, the Board of Bishops has the sole power to authorize such a transaction. Since the Presiding Bishop was not authorized by the Board of Bishops to sign the deed, the transaction was not valid under Florida law. We conclude that the district court did not err in granting the Church's motion for summary judgment.

Finally, the Tallahassee Congregation filed a motion for an injunction pending this appeal seeking to stop the Church from barring the Tallahassee Congregation members from the Tallahassee property. A motion requesting such relief ordinarily must first be made in the district court unless the moving party shows that the court has already denied the requested relief or that moving first in the district court would be impracticable. Fed. R. App. P. 8(a)(1)(A), (2)(A). Additionally, "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion" needed for issuance of the stay. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

The Tallahassee Congregation did not first request injunctive relief in the district court and has not met its burden of showing that the circumstances justify an exercise of this court's discretion. Moreover, our decision renders the request for relief moot.

We affirm the district court's order granting summary judgment and deny the Tallahassee Congregation's motion for an injunction pending appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

6